

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00235-CR

_____

FRANCISCO NOEL MARTINEZ, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 5
Tarrant County, Texas
Trial Court No. 1544967

---

Before Sudderth, C.J.; Gabriel and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I.  Introduction

Appellant Francisco Noel Martinez was convicted of assault causing serious bodily injury to a family member, a Class A misdemeanor.  *See* Tex. Penal Code Ann. § 22.01(a)(1).  Punishment was assessed by the trial court at 200 days in the Tarrant County Jail.[1]

---

[1]The judgment reflects in two places that punishment was assessed by the jury. The reporter's record, however, reflects that the State offered Martinez 200 days in Tarrant County Jail, that he accepted the State's offer, and that the trial court sentenced him as follows:

[PROSECUTOR]:  I offer 200 days, Your Honor.

THE COURT:  All right.  And that is your understanding, [defense counsel]?

[DEFENSE COUNSEL]:  Yes, Your Honor.

THE COURT:  And that is your understanding, Mr. Martinez?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that's what you wish to do, is take that rather than go to a punishment hearing with the jury?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Based on that, the jury having found you guilty, I'll set your punishment at 200 days in the Tarrant County Jail.

We have authority to correct a judgment below to make the record "speak the truth" when we have the necessary data and information to do so.  *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).  Accordingly, we modify the judgment to reflect that the punishment was assessed by the trial court.  *See Hopper v.*

Martinez raises two issues, both of which contend that the trial erred by failing to instruct the jury that evidence of an extraneous offense could only be considered for limited purposes. No error occurred. Evidence of the extraneous offense came before the jury through questions asked of Martinez by his own counsel. At the time the evidence was introduced, Martinez's counsel did not request an instruction limiting the purposes for which the evidence could be considered by the jury. Further, his counsel never requested that a limiting instruction be submitted in the charge. We affirm the judgment as modified.

## II. Background

Martinez assaulted his former girlfriend, Complainant, while moving out of an apartment that they once had shared.[2] The jury heard testimony not only of the assault that was the basis of the charge against him but also of prior instances of Martinez's abuse of Complainant.

During their three-year relationship, Martinez and Complainant had one child together. Martinez's defensive theory centered on the contention that Complainant had fabricated the assault allegation against him as a means of obtaining sole custody of their child. According to Martinez's defensive theory, Complainant falsely claimed

*State*, 483 S.W.3d 235, 241 (Tex. App.—Fort Worth 2016, pet. ref'd) (modifying judgment to reflect that the trial court assessed punishment).

[2]Martinez does not challenge the sufficiency of the evidence underlying his conviction. Therefore, we outline only those facts necessary to give his complaints context.

an assault and planned to use Martinez's arrest and incarceration to prevent him from appearing at the hearing in Tarrant County on Complainant's motion to obtain sole managing conservatorship of their child.

Martinez chose to testify. He contended that he did not learn of the assault charge against him until he was told of it while being held in the Parker County Jail. Apparently, to explain why he was being held in Parker County, Martinez's counsel solicited the following responses from him during direct examination:

Q. How did you end up in Parker County?

A. I was reporting for probation.

Q. Why did you go and report for probation? Was it your normal time to report?

A. Correct.

Q. So the normal routine; you were going in to report. What were you on probation for?

A. I was on probation for a controlled substance, possession of a controlled substance.

Q. How long had you been on probation?

A. For about four months.

Q. So you had recently just got on probation.

A. Yes, ma'am.

Q. And you were doing your normal reporting.

A. Yes, ma'am.

Q. And you reported and -- how long were you going to be placed on probation?

A. Three years.

Q. You had three years of probation.

A. Yes, ma'am.

Q. So [Complainant] was aware of all of this?

A. Correct.

Q. She knew who your probation officer was?

A. I'm not aware if she did or not.

Q. So when you went to report for probation, what happened?

A. They told me that I had a warrant for my arrest.

Q. Is that the reason that you were taken into custody?

A. Oh, no, no, no. That day I failed a UA.[3]

Q. So they UA'd you that day, and you failed?

A. Yes, ma'am.

Q. And what was -- why did you fail?

A. For amphetamines.

Q. And why were you taking amphetamines?

A. I was basically self-medicating because I couldn't get my Adderall. I didn't have insurance at the time, so . . .

---

[3] "UA" refers to a urinalysis.

Q. So you were -- you're prescribed Adderall.

A. Correct.

Q. How long had you been taking Adderall?

A. For about a year recently. Before that, ever since I was in, like, third grade.

Q. Since third grade?

A. Yeah.

Martinez's counsel never requested an instruction limiting the purposes for which the jury could consider the offense for which he was placed on probation. The State cross-examined Martinez on his theory that Complainant was "trying to pull a fast one on [him] by having this hearing [on the child custody matter] while [he was] in custody." The State asked Martinez a number of questions without objection confirming that he was on felony probation for possession of a controlled substance. This examination drew only one objection at the time the State asked and Martinez answered "no" to the following question: "Well, so was -- was that what caused you to fail the drug test, was because [Complainant] was trying to have this hearing to establish custody?" The objection was as follows: "I'm going to object to her question. She's -- talking about failing a drug test, the relevance of failing a drug test [while] in [] custody prevented him from showing up to the custody hearing." Subsequent questions by the State to confirm that Complainant's actions did not cause Martinez to fail the drug test drew no objection.

6

When the parties rested and closed, the trial court asked defense counsel, "Do you see anything in the charge?" Martinez's counsel responded, "No." The charge instructed the jury that it could consider an extraneous offense committed by Martinez only if it believed beyond a reasonable doubt that he had committed the offense. The charge also stated: "You are further instructed that you may consider all relevant facts and circumstances that would assist you in determining whether the actor committed the offense of assault bodily injury -- family violence[,] including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim."

During closing, the State challenged the basis of Martinez's defensive theory that Complainant had acted deviously in attempting to obtain custody of their child by noting that it would be reasonable to obtain custody from a person who had assaulted her and "who's on felony probation in Parker County."

The State made a similar argument challenging Martinez's theory by noting that Complainant had no control over Martinez's incarceration in Parker County: "Did [Complainant] have any control over him being on felony probation? Did [Complainant] know when his drug tests were coming up? Did [Complainant] force him to take an amphetamine to make him fail his drug test? Did [Complainant] have any control over all of this?" The final reference to felony probation came when the State noted that Complainant had acted reasonably in getting her child out of the situation created by Martinez's probation and the revocation of that probation. The

7

State argued that Martinez should take responsibility for his actions. None of the State's arguments drew an objection from Martinez's counsel.

### III. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.*

### IV. Appellant's Contentions

Martinez sorts evidence of extraneous offenses into two categories. First, he acknowledges that evidence of other assaults that he may have committed against Complainant was admissible under Texas Code of Criminal Procedure article 38.371.[4] But he argues that nonrelational evidence of extraneous offenses may not be used to establish character and may be admitted only for the limited purposes found in Texas Rule of Evidence 404(b), "such as proving motive, opportunity, intent, preparation,

---

[4]Article 38.371(b) provides,

> In the prosecution of an offense described by Subsection (a), subject to the Texas Rules of Evidence or other applicable law, each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense described by Subsection (a), including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim.

Tex. Code Crim Proc. Ann. art. 38. 371(b).

8

plan, knowledge, identity, absence of mistake, or lack of accident." *See* Tex. R. Evid. 404(b)(1), (2).[5] Martinez's argument continues that the trial court should have instructed the jury to limit its consideration of his felony conviction for possession of a controlled substance and of his failure to pass the urinalysis to only those purposes allowed under rule 404. He argues, "Without this instruction the jury in this matter may have considered the Appellant's drug usage and subsequent placement upon probation for a drug[-]related felony as character conforming pattern evidence." It also appears to be Martinez's argument that the trial court has an independent duty to give such a limiting instruction so that the charge correctly states the law as required by article 36.14 of the Texas Code of Criminal Procedure.

---

[5]Texas Rule of Evidence 404 provides,

**(b) Crimes, Wrongs, or Other Acts.**

> **(1) *Prohibited Uses.*** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> **(2) *Permitted Uses; Notice in Criminal Case.*** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief.

Tex. R. Evid. 404(b).

## V. Martinez's counsel did not request a limiting instruction when Martinez testified about an extraneous offense. Thus, the trial court did not err by failing to include a jury instruction describing the limitations of rule 404.

Martinez sought no limiting instruction when his counsel solicited the testimony that he committed an extraneous offense. At that instant, the jury could consider the offense for whatever purpose it wished, and the trial court had no duty to attempt to unring the bell by instructing the jury on the limitations found in rule 404.

Martinez does not distinguish or even mention the opinion of the Texas Court of Criminal Appeals that disposes of his claim. *Hammock v. State* dealt with the effect of not requesting a limiting instruction when evidence of an extraneous offense was first offered. 46 S.W.3d 889 (Tex. Crim App. 2001). In *Hammock*, the court of criminal appeals dealt with an argument "that the trial court should have submitted an instruction to the jury stating that evidence of previous charges and convictions could not be considered as evidence of guilt in the instant offense." *Id.* at 892.

*Hammock* first cites Texas Rules of Evidence 105(a) and its provision requiring a request for a limiting instruction: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." *Id.* at 892 (emphasis added) (citing Tex. R. Evid. 105(a)). Rule 105, in *Hammock*'s view, "seems to place the relevant timing for a limiting instruction request at the moment the evidence is admitted." *Id.* at 893.

Without an immediate check on the purposes for which the jury can consider an extraneous offense, a later charge instruction asks the jury to do the impossible and first consider evidence for all purposes and then consider the same evidence for only a limited purpose:

> Allowing the jury to consider evidence for all purposes and then telling them to consider that same evidence for a limited purpose only is asking a jury to do the impossible. If a limiting instruction is to be given, it must be when the evidence is admitted to be effective.

*Id.* at 894. The court of criminal appeals asked when the request for an instruction was appropriate and indicated that the request should occur when "it was apparent that a limiting instruction was proper." *Id.* at 895.

Here, Martinez's counsel specifically asked him what he was on probation for. Presumably, she knew what her client would say in response to her questions. If she wanted to limit the purposes for which the jury could have considered the Parker County offense, that need was apparent when she solicited the testimony from her client.

*Hammock* also disposes of Martinez's argument that the trial court had an independent duty to instruct the jury on the limited purposes for which an extraneous offense may be considered under rule 404. The trial court had no duty to give a sua sponte limiting instruction because any duty to instruct the jury could arise only if there had been a timely request for a limiting instruction. *See id.* In other words, without a timely request for a limiting instruction, an instruction never became part of

11

the law applicable to the case—"a limiting instruction on the evidence was not 'within the law applicable to the case'"—and the trial court was not required to include a limiting instruction in the charge to the jury under article 39.14's requirements. *See id.*; *see also Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) ("[l]f a defendant does not request a limiting instruction . . . at the time that evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge."); *Scott v. State*, No. 02-14-00183-CR, 2015 WL 3523155, at *5 (Tex. App.—Fort Worth June 4, 2015, pet. ref'd) (mem. op., not designated for publication) (same); *Freeman v. State*, 413 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (same); *Taylor v. State*, No. 02-11-00092-CR, 2012 WL 955383, at *7 (Tex. App.—Fort Worth Mar. 22, 2012, no pet.) (mem. op., not designated for publication) (same).[6]

The trial court did not err by failing to give an instruction that Martinez never requested. The trial court had no independent duty to rectify any failure by Martinez's

---

[6]Martinez's argument relies primarily on *Jones v. State*, which he incorrectly identifies as an opinion of the court of criminal appeals. 119 S.W.3d 412, 425–27 (Tex. App.—Fort Worth 2003, no pet.). Martinez cites *Jones* for the proposition that including two limiting instructions in the charge on the issue of extraneous offenses is not error. That argument begs the question. The question before us asks whether the trial court erred by failing to submit an additional 404(b) instruction without any attempt by Martinez to limit the purposes for which the jury could consider the extraneous offense. Without that request, the trial court did not err by failing to submit the additional instruction Martinez has now decided he wanted. Whether two limiting instructions may be appropriate in some cases does not translate into error by failing to submit two instructions when the appellant fails to lay the predicate to obtain one of those instructions.

counsel to request an instruction by sua sponte instructing the jury on the parameters of rule 404. We therefore overrule Martinez's two issues.

## VI. Conclusion

Having determined that the judgment incorrectly states in two places that punishment was assessed by the jury, we modify those two places in the judgment to reflect that punishment was assessed by the trial court. Having overruled Martinez's two issues, we affirm the judgment as modified.

/s/ Dabney Bassel
Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 28, 2019

13